IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GREAT AMERICAN INSURANCE  )
COMPANY,                   )          Civil Action No. 04-1148
      Plaintiff,        )
                           )
    vs.                    )          Judge McVerry
                           )          Magistrate Judge Mitchell
NORWIN SCHOOL DISTRICT,    )
    Defendant and Third-Party  )
    Plaintiff,             )
                           )
    vs.                    )
                           )
SHOFF CONSTRUCTION & DESIGN  )
INC. and FOREMAN PROGRAM &   )
CONSTRUCTION MANAGERS, INC.,  )
    Third-Party Defendants.  )

REPORT AND RECOMMENDATION

I.    <u>Recommendation</u>

      It is respectfully recommended that the motion for summary judgment submitted on

behalf of Plaintiff (Docket No. 43) be granted.  It is further recommended that the motion for

summary judgment submitted on behalf of Third-Party Defendant Shoff Construction & Design,

Inc. as to the cross-claims filed against it by Third-Party Defendant Foreman Program &

Construction Managers, Inc. (Docket No. 48) be granted.  It is further recommended that the

motion for summary judgment submitted on behalf of Defendant Norwin School District against

Third-Party Defendant Foreman Program & Construction Managers, Inc. (Docket No. 49) be

granted as to Counts V and VII of the Third-Party Complaint and denied with respect to Counts

VI and VIII.  It is further recommended that the motion for summary judgment submitted on

behalf of Third-Party Defendant Foreman Program & Construction Managers, Inc. (Docket No.

53) be granted with respect to Counts VI and VIII of the Third-Party Complaint and denied as to Counts V and VII.

II.      Report

Plaintiff, Great American Insurance Company ("Great American"), brings this action against Defendant, Norwin School District ("Norwin"), arising out of Norwin's failure to obtain Plaintiff's consent prior to paying a contractor and its retainage of certain fees in connection with two construction projects for which Great American served as surety.  Defendant has filed a counterclaim against Great American and a third-party complaint against both the contractor, Shoff Construction & Design, Inc. ("Shoff") and the construction manager, Foreman Program & Construction Managers, Inc. ("Foreman").  Shoff and Foreman have filed cross-claims against each other and Shoff has filed a counterclaim against Norwin.

Presently before this Court for disposition are four motions for summary judgment: 1) by Great American against Norwin on its claims and on Norwin's counterclaim against it; 2) by Shoff on the cross-claims filed against it by Foreman; 3) by Norwin on its third-party claims against Foreman; and 4) by Foreman against Norwin.  For the reasons that follow, the motions submitted by Great American and Shoff should be granted, Foreman's motion should be granted in part and denied in part and Norwin's motion should be granted in part and denied in part.

Facts[1]

---

[1]      The facts are taken from the Concise Statement of Material and Undisputed Facts submitted by Great American (Docket No. 44), with its supporting Appendix (Docket No. 47); the statement submitted by Shoff (Docket No. 48-4), with its supporting Appendix and exhibits (Docket Nos. 48-5 to 48-13); the statement submitted by Norwin (Docket No. 51) with its supporting Appendix (Docket No. 52); and the statement submitted by Foreman (Docket No. 55), with its supporting Appendixes (Docket Nos. 56-58).

Great American is a surety that issued performance and payment bonds under two construction contracts Norwin entered into with Shoff.  On or about February 18, 2002, Norwin entered into a contract with Shoff for the construction of the Sheridan Terrace Elementary School in North Huntingdon, Pennsylvania (the "Sheridan Contract").  (Docket No. 47 Ex. 1.)  On or about April 17, 2002, Norwin entered into a contract with Shoff for the construction of the Hillcrest Intermediate School in North Huntingdon, Pennsylvania (the "Hillcrest Contract").  (Docket No. 47 Ex. 2.)  These contracts were signed by Shoff's President, Charles R. Shoff, and by Richard G. Watson, then Superintendent of the School District.

Both the Sheridan Contract and the Hillcrest Contract incorporated by reference the General Conditions of the Contract for Construction, AIA (American Institute of Architects) Document A201/CMa – Electronic Format and Supplementary Conditions thereto ("General Conditions").[2]  See Docket No. 47 Exs. 1 & 2 arts. 1, 9.1.2, 9.1.3.  The General Conditions incorporate the Standard Agreement and the Supplementary Conditions.  (Docket No. 57 Ex. G art. 1.1.1. )  The Supplementary Conditions supersede the General Conditions.  (Docket No. 57 Ex. H art. 1.2.3.4.)

On August 20, 2001, Norwin and Foreman entered into a contract for Foreman to provide construction management services on these two projects.  The contract between Foreman and Norwin also incorporated the General Conditions.  See Docket No. 52 Ex. 2 at 1.  The architect on the projects was N. John Cunzolo Associates, Inc. ("Cunzolo").  (Tkacik Aff. ¶ 2; Watson

---

[2]       The General Conditions are attached to Norwin's Appendix (Docket No. 52) at Exhibit 7 and to Foreman's Appendix (Docket No. 57) at Exhibits G (General Conditions) and H (Supplementary Conditions).  Although Great American's Appendix contains the General Conditions (Docket No. 47 Ex. 3), it does not contain the Supplementary Conditions.

Dep. at 34.)[3]  Cunzolo is not a party to this case.  (Docket No. 55 ¶ 10; Docket No. 62 ¶ 10; Docket No. 65 ¶ 10.)  The contract between Norwin and Cunzolo also incorporated the General Conditions.  See Docket No. 56 Ex. D at 1.

Shoff was required to pay for all labor and materials.  (Docket No. 47 Ex. 3 art. 3.4.1.) Under the terms of the Supplementary Conditions, Norwin was required to and did require Shoff to obtain and pay for both a performance bond and a payment bond to those furnishing equipment, labor and material for the performance of the contracts.  (Docket No. 52 Ex. 7 art. 11.4.1.)  Great American issued the Sheridan Performance Bond and the Sheridan Payment Bond on behalf of Shoff as principal and in favor of Norwin as obligee in the amount of $3,750,700.00. (Docket No. 48-11.)  Great American issued the Hillcrest Performance Bond and the Hillcrest Payment Bond on behalf of Shoff as principal and in favor of Norwin as obligee in the amount of $5,422,400.00.  (Docket No. 48-10.)

Pursuant to Article 5 of both the Sheridan and Hillcrest Contracts and corresponding sections of the General Conditions, Norwin was to retain ten percent from Shoff's progress payments until fifty percent of the project had been billed and thereafter it was to retain five percent.  The retainage which Norwin was required to hold on both projects was security to both Norwin, as obligee, and Great American, and Norwin could not release the remaining five percent on either project without consent of the surety.  (Docket No. 47 Exs. 1-2 arts. 5.6-5.8; Docket No. 52 Ex. 7 arts. 9.3.6 & 9.3.7.)

Article 6 of the Sheridan and Hillcrest Contracts pertains to final payment.  It provides as

---

[3]     The affidavit of Hank Tkacik is attached to Norwin's Supplemental Appendix (Docket No. 66) at Exhibit 2.  The excerpt from Richard Watson's deposition is attached to Foreman's Appendix (Docket No. 58) at Exhibit L.

follows:

> Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by [Norwin] to [Shoff] when (1) the Contract has been fully performed by [Shoff] except for [Shoff's] responsibility to correct nonconforming Work as provided in Subparagraph 12.2.2 of the General Conditions and to satisfy other requirements, if any, which necessarily survive final payment; and (2) a final Project Certificate for Payment has been issued by [Foreman] and [Cunzolo]; such final payment shall be made by [Norwin] not more than 30 days after the issuance of the final Project Certificate for Payment...

(Docket No. 47 Exs. 1-2 art. 6.)  The General Conditions provided that "[n]either final payment nor any remaining retained percentages shall become due until [Shoff] submits to [Cunzolo] through [Foreman] ... (4) consent of surety [Great American], if any, to final payment...."

(Docket No. 47 Ex. 3 art. 9.10.2.)

The Sheridan Contract was initially in the amount of $3,750,700.00.  As a result of additions and deletions to the Sheridan Contract scope, the final contract value was $3,731,574.00.  (Docket No. 52 Ex. 4.)  The Hillcrest Contract was initially in the amount of $5,422,400.00.  As a result of additions and deletions to the Hillcrest Contract scope, the final contract value was $5,615,267.11.  (Docket No. 52 Ex. 6.)

On the Hillcrest Contract, Shoff submitted Application for Payment No. 6, dated October 25, 2002, with a retainage amount of five percent.  This request was certified by the Construction Manager (Foreman) and the Architect (Cunzolo).  Norwin made the payment on November 18, 2002.  (Docket No. 47 Ex. 7.)  On November 19, 2002, Shoff submitted Application for Payment No. 7, requesting a reduction in retention to 4.75 percent.  It was certified by Foreman and Cunzolo and Norwin made the payment on December 2, 2002.  (Docket No. 47 Ex. 7.)  On September 4, 2003, Shoff submitted Application for Payment No. 16, requesting a further reduction in retention to 3.5 percent.  The request was certified by Foreman and Cunzolo and

5

Norwin made the payment on September 15, 2003.  (Docket No. 52 Ex. 10.)  On September 24, 2003, Shoff submitted Application for Payment No. 17, requesting a further reduction in retention to two percent.  It was certified by Foreman and Cunzolo, and Norwin made the payment on October 29, 2003.  (Docket No. 52 Ex. 11.)

On November 24, 2003, Shoff submitted Application for Payment No. 18, requesting final payment on the Hillcrest Contract in the amount of $78,362.65.  On December 8, 2003, Foreman sent the application to Norwin with a letter stating that it had reviewed the application and was recommending that it be paid.  (Sbarra letter Dec. 8, 2003; Sbarra Dep. at 187-88.)[4] Cunzolo did not sign the Final Payment Application.  Nevertheless, Norwin made the payment on December 16, 2003.  (Docket No. 52 Ex. 12.)

On the Sheridan Contract, Shoff submitted Application for Payment No. 15, dated May 28, 2003, with a retainage amount of five percent.  It was certified by Foreman and Cunzolo and Norwin made the payment on June 17, 2003.  (Docket No. 47 Ex. 7.)  On June 30, 2003, Shoff submitted Application for Payment No. 16, requesting a reduction in retention to 2.5 percent.  It was certified by Foreman and Cunzolo and Norwin made the payment on July 28, 2003.  (Docket No. 52 Ex. 19.)  On July 28, 2003, Shoff submitted Application for Payment No. 17, requesting a further reduction in retention to .67 percent.  The request was certified by Foreman and Cunzolo, and Norwin made the payment on August 18, 2003.  (Docket No. 52 Ex. 20.)

The last Application for Payment on the Sheridan Contract submitted by Shoff was No. 19, dated September 4, 2003, which requested payment of all remaining contract sums.  (Docket No. 52 Ex. 21.)  Foreman and Cunzolo certified payment in full to Shoff of the requested amount

---

[4]        Docket No. 52 Exs. 13 & 14.

of $24,961.17.  (Balog Dep. at 57-58.)[5]  On September 15, 2003, Foreman sent the application to Shoff with a cover letter recommending that it be paid.  ( Docket No. 66 Ex. 1 at 3.)  Norwin paid $19,961.17 to Shoff on November 26, 2003.  Norwin states that it withheld $5,000.00 on the Sheridan Contract to cover the estimated cost to remedy three incomplete terms under Shoff's Contract.  (Balog Dep. at 23, 39-40.)[6]

Norwin never obtained a Consent of Surety to Final Payment (Form G707) from Great American for either project.  (Watson Dep. at 103; Wilson Dep. at 47-48, 51; Sbarra Dep. at 165-66; Balog Dep. at 57; Norwin Supp. Answers Pl.'s Req. Admiss. Nos. 13, 15)[7]

Great American made payments to labor and material bond claimants on the Sheridan Payment Bond in the amount of $277,798.35.  Great American made payments to labor and material bond claimants on the Hillcrest Payment Bond in the amount of $503,391.49.  (Beach Aff. ¶¶ 3-4 & Ex. 1.)[8]  By virtue of the foregoing payments, Great American alleges that it is subrogated to the contract balances that were improperly paid by Norwin without first obtaining the necessary Consent of Surety to Final Payment.

Procedural History

Plaintiff filed this action on August 4, 2004 and on October 22, 2004, it filed an amended complaint.  Jurisdiction is based on diversity of citizenship in that Plaintiff is an Ohio

---

[5]    Docket No. 52 Ex. 22.

[6]    Docket No. 52 Ex. 23.

[7]    Docket No. 47 Exs. 6 & 7 (Wilson excerpt).

[8]    The affidavit of Joel D. Beach, Bond Claims Director I for Great American, together with the attached spreadsheets that are business records of Great American maintained in the ordinary course of its business, constitutes Docket No. 46.

corporation with its principal place of business in Cincinnati, Ohio; Defendant is a school district organized and existing under the laws of Pennsylvania with offices in North Huntingdon, Pennsylvania; and the amount in controversy is in excess of $75,000.00, exclusive of interest and costs.  (Am. Compl. ¶¶ 1-3.)  Count I alleges that Norwin breached its contractual responsibility under the Sheridan Contract by failing to obtain Plaintiff's consent prior to paying Shoff $181,578.00 and by improperly retaining $5,000.00 and thereby impaired Plaintiff's security to the extent that the retainage was improperly paid.  Count II alleges that the Norwin breached its responsibility under the Hillcrest Contract by failing to obtain Plaintiff's consent prior to paying $280,763.36 to Shoff and thereby impaired Plaintiff's security to the extent that the retainage was improperly paid.  Plaintiff seeks these amounts, plus interest, attorney fees, costs and other charges under the Public Contractor and Subcontractor Payment Act, 62 Pa. C.S. §§ 3931-39 (the "PCSPA").

On January 14, 2005, Norwin filed a third-party complaint against Shoff and Foreman (Docket No. 16).  Count I alleges that Shoff breached its contractual responsibilities under the Sheridan Contract by failing to pay its equipment, labor and materials suppliers in the total amount of $218,489.05.  Count II alleges that Shoff breached its contractual responsibilities under the Hillcrest Contract by failing to pay its equipment, labor and materials suppliers in the total amount of $459,688.36.  Count III alleges that Shoff breached the Sheridan Contract by failing to correct and complete defective and incomplete work within the warranty period, and Count IV makes this same allegation with respect to the Hillcrest Contract.  Count V alleges that Foreman breached its management contract with Norwin in the Sheridan Contract by failing to produce and obtain the necessary documentation and certify the same with respect to payments to

8

contractors, including Shoff, and Count VII makes this same allegation with respect to the Hillcrest Contract.  Count VI alleges that Foreman was negligent in its performance of the Sheridan Contract, and Count VIII alleges that Foreman was negligent in its performance of the Hillcrest Contract.

Norwin also filed an answer to the amended complaint, and it contained a counterclaim against Great American, alleging that it has breached the terms and conditions of the maintenance bonds it issued by failing to take action to complete work or remedy defective work by Shoff (Docket No. 18).  Foreman then filed its answer to the third-party complaint, and it contained a cross-claim against Shoff (Docket No. 23).  Shoff filed its answer to the third-party complaint, and it contained a counterclaim against Norwin for breach of contract and violation of the Commonwealth Procurement Code and a cross-claim against Foreman (Docket No. 26).

On November 30, 2005, the following motions for summary judgment were filed: 1) by Great American against Norwin (Docket No. 43); 2) by Shoff as to the cross-claim filed against it by Foreman (Docket No. 48); 3) by Norwin against Foreman (Docket No. 49); and 4) by Foreman against Norwin (Docket No. 53).[9]

Standard of Review

Summary judgment is appropriate "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'  Woodside v. School Dist. of Philadelphia Bd. of Educ., 248 F.3d 129, 130 (3d

---

[9]     Shoff has not moved for summary judgment with respect to Norwin's claims against it, nor has Norwin moved for summary judgment with respect to Shoff's counterclaim against it. Foreman has not moved for summary judgment with respect to Shoff's cross-claim against it.

Cir. 2001) (quoting <u>Foehl v. United States</u>, 238 F.3d 474, 477 (3d Cir. 2001) (citations omitted)). In following this directive, a court must take the facts in the light most favorable to the non-moving party, and must draw all reasonable inferences and resolve all doubts in that party's favor. <u>Doe v. County of Centre, Pa.</u>, 242 F.3d 437, 446 (3d Cir. 2001); <u>Woodside</u>, 248 F.3d at 130; <u>Heller v. Shaw Indus., Inc.</u>, 167 F.3d 146, 151 (3d Cir. 1999).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing'–that is, pointing out to the District Court–that there is an absence of evidence to support the non-moving party's case." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986); <u>Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.</u>, 998 F.2d 1224, 1230 (3d Cir. 1993).

<u>Great American's Motion</u>

Great American argues that: 1) Norwin has failed to assert any material facts which, if true, would preclude entry of summary judgment in favor of Great American as a matter of law and Great American is entitled to be paid the full final payment, including the five percent retention that Norwin paid to Shoff; 2) Norwin is not entitled to any credit for reinsurance or collateral obtained by Great American; and 3) Norwin's counterclaim is barred by the statute of limitations and the bond provisions.

With respect to Great American's claims against Norwin, the undisputed evidence demonstrates that Norwin made the final payments to Shoff without obtaining Great American's

consent, as required by the contract documents.  Norwin has not disputed the factual basis for Great American's claims and has not filed a brief in opposition to Great American's motion for summary judgment.

Great American notes that Norwin has attempted to claim a credit on its indebtedness to Great American based on a reinsurance agreement entered into between Great American and its underwriter, Seubert and Associates, Inc., but that Norwin is not a party to this agreement and has no rights thereunder.  It further notes that Norwin has attempted to claim a credit on its indebtedness based upon collateral that Great American obtained from Shoff subsequent to the payment, made under its bond to laborers and materialmen, totaling $781,189.84.  Great American states that the remaining five percent in the amount of $186,578.70 on the Sheridan Contract and the remaining five percent in the amount of $280,763.36 on the Hillcrest Contract were improperly paid to Shoff by Norwin and are not reduced by the value of any collateral Great American may have taken as the Shoff collateral was taken after Norwin made improper payment to Shoff and not before.  (Beach Dep. at 123-24; Mortgage dated Mar. 29, 2004.)[10]

Great American points out that Norwin was not a party to the collateral agreements and has no rights thereunder.  As noted, Norwin has not challenged these facts and has not filed a brief presenting counter-arguments to Great American's arguments.  Norwin was not a party to either the reinsurance agreement or the collateral agreements and has no rights thereunder.

Because there are no genuine issues of material fact and because Great American has demonstrated that it is entitled to judgment in its favor as a matter of law, Great American's motion for summary judgment with respect to its claims against Norwin should be granted.

---

[10]     Docket No. 47 Ex. 8.

Norwin's counterclaim alleges that Great American is liable to Norwin under the terms of Maintenance Bonds issued on the two construction projects.  Great American issued Maintenance Bond No. 5445500 on the Sheridan project on February 27, 2002 and Maintenance Bond No. 5445546 on the Hillcrest project on April 25, 2002.  These bonds are identical and provide, in relevant part, as follows:

> NOW, THEREFORE, the conditions of this obligation is such that, if contractor shall remedy any defects due to faulty materials or workmanship; and pay for any damage to the other work resulting therefrom, which shall appear for a period of one (1) year(s) from date of acceptance by Owner, then this obligation to be void, otherwise remain in full force and effect.

(Docket No. 52 Exs. 8-9.)

The Sheridan Terrace Elementary School was accepted by Norwin on August 11, 2003, the date of its dedication.  (Sheridan Terrace dedication booklet; Wilson Dep. at 19-20.)[11]  The Hillcrest Intermediate School was accepted by Norwin on August 23, 2003, the date of its dedication.  (Hillcrest dedication booklet, Docket No. 47 Ex. 11.)  During the one-year maintenance bond period Norwin made no claims against Great American on either bond.  The first time Great American heard from Norwin about this issue was in September of 2004 on the Hillcrest Contract.  (Beach Dep. at 59; Sbarra Dep. at 50-52, 135-37; Balog Dep. at 29 & Sep. 2, 2004 letter.)[12]  No notice was ever provided on the Sheridan Contract.

Following the September 2004 letter to Great American, Cunzolo wrote in a letter dated October 21, 2004 that: "The correction of defective and non-conforming work is not required to

---

[11]     Docket No. 47 Ex. 10.

[12]     The excerpt of Joel Beach's deposition is attached to Docket No. 47 at Exhibit 12.  The excerpts from the depositions of Tony Sbarra and Steve Balog and the letter are attached to Docket No. 47 at Exhibit 13.

be performed by Shoff Construction & Design, Inc." (Docket No. 47 Ex. 14.)  More than two years after the projects were completed, Foreman attempted to make a claim on both maintenance bonds and Great American rejected these claims as untimely.  (Kilgus letter, Oct. 18, 2005; Great American response.)[13]

Norwin admits that it failed to give notice to Great American within the one-year period prescribed in the bonds.  (Watson Dep. at 118; Sbarra Dep. at 51-52.)[14]  Because there are no genuine issues of material fact that Norwin's counterclaim is untimely, Great American's motion for summary judgment with respect to Norwin's counterclaim should be granted.

Shoff's Motion on Foreman's Cross-Claim

Foreman seeks contribution and indemnity from Shoff to the extent that it is held liable on Norwin's third-party claims.  Shoff argues that Foreman lacks standing to pursue contractual claims against it and that any tort claims Foreman purports to have against it are barred by the economic loss doctrine.  Foreman responds that it meets the test for being a third-party beneficiary under Pennsylvania law.

Shoff notes that the damages sought by Great American against Norwin are entirely economic in nature in that they reflect the amount of payments allegedly made by Norwin to Shoff in violation of the terms of the underlying construction contracts.  Foreman admits that the damages Great American seeks are entirely economic in nature and do not include personal injury and property damages.  (Docket No. 70 ¶ 5.)  The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a

---

[13]     Docket No. 47 Ex. 15.

[14]     Docket No. 47 Ex. 16.

contract." Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc., 247 F.3d 79, 104 (3d Cir. 2001) (citation omitted).  The court doubted that the doctrine should be applied to non-products liability cases, suggesting that the gist of the action doctrine is a better test.  Id. at 104 n.11. However, the result is the same.  Under the gist of the action doctrine, "a claim should be limited to the claim when 'the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied in the law of torts.'"  Id. at 104 (quoting Bash v. Bell Tel. Co., 601 A.2d 825, 830 (Pa. Super. 1992)).

Foreman admits that there are no contracts between it and Shoff in connection with either project.  However, it states that "Shoff freely entered in an agreement w[h]ere it agreed to indemnify [Foreman] for Shoff's negligence. Furthermore, all the contracts reference and incorporate the contract documents, including the General and Supplemental Conditions." (Docket No. 70 ¶ 6.)

Shoff argues that, under Pennsylvania law, an action based on contract may not be maintained by or against a person not party to the contract unless that entity is a third-party beneficiary to the contract or the suit is for product liability or breach of warranty.  Manor Junior College v. Kaller's, Inc., 507 A.2d 1245, 1249 (Pa. Super. 1986).[15]  Foreman argues that it meets the requirements for being a third-party beneficiary to the contract between Shoff and Norwin.

In Guy v. Liederbach, 459 A.2d 744 (Pa. 1983), the Pennsylvania Supreme Court adopted

---

[15]      In Bilt-Rite Contractors, Inc. v. The Architectural Studio, 866 A.2d 270 (Pa. 2005), the Pennsylvania Supreme Court held that it would adopt Restatement (Second) of Torts § 552, and allow for a cause of action by a contractor for foreseeable harm resulting from relying on plans negligently designed by an architect or other design professional that knows its work will be used by others (even if it does not know their specific identity).  The court further held that lack of privity is not a bar and that the economic loss rule does not apply to claims of negligent misrepresentation under § 552.  This exception is not applicable to this case.

14

the Restatement (Second) of Contracts § 302 (1979) as a guide for analysis of third-party

beneficiary claims in Pennsylvania.  The court concluded:

> There is thus a two part test for determining whether one is an intended third party beneficiary: (1) the recognition of the beneficiary's right must be "appropriate to effectuate the intention of the parties," and (2) the performance must "satisfy an obligation of the promisee to pay money to the beneficiary" or "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance."

Id. at 751.

Subsequently, the Pennsylvania Supreme Court clarified that this test is not limited to the

context of a will situation.  Scarpitti v. Weborg, 609 A.2d 147 (Pa. 1992).  Specifically, the court

held that:

> a party becomes a third party beneficiary only where both parties to the contract express an intention to benefit the third party in the contract itself, unless, the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and the performance satisfies an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

Id. at 150-51 (citing Guy and Spires v. Hanover Fire Ins. Co., 70 A.2d 828 (Pa. 1950)).

Foreman notes that the Supplementary Conditions specifically required Shoff to:

> indemnify and hold harmless [Norwin, Cunzolo and Foreman] ... from and against claims, damages, losses, and expenses, including but not limited to attorneys' fees and defense costs arising out of or resulting from performance of the Work, but only to the extent caused in whole or in part by the acts or omissions of [Shoff] ... for whose acts or omissions they may be liable, regardless of whether or not such claim, damage, loss, or expense is caused in part by a party indemnified hereunder.

(Docket No. 57 Ex. H art. 3.18.1.)  Thus, it contends that Shoff and Norwin clearly intended to

require Shoff to indemnify Foreman for claims arising out of Shoff's performance of its work on

the project.  Because Shoff failed to obtain the consent of surety, Foreman argues that it failed to

15

properly perform its work under the contract and that Shoff is liable for any claims brought by Norwin against Foreman as a result.

Shoff responds that the General Conditions specifically stated that the contract documents "shall not be construed to create a contractual relationship of any kind ... (2) between the Construction Manager and the Contractor...."  (Docket No. 57 Ex. G art. 1.1.2.)  Thus, it contends that the contracting parties expressed their intent not to create third-party beneficiary rights on the part of Foreman, the Construction Manager.

Shoff also argues that its failure to pay its subcontractors does not create any liability for Foreman.  Although Great American paid these subcontractors pursuant to the Payment Bonds, this sequence of events did not give rise to Great American's claims against Norwin or Norwin's claims against Foreman.  Shoff points out that the sole basis of Great American's claim is Norwin's failure to obtain the surety's consent to the final payment and therefore the claim does not arise out of or result from Shoff's "performance of the work" as contemplated by Article 3.18.1 of the Supplementary Conditions.

Moreover, Shoff notes that Article 3.18.3 of the General Conditions (which was not modified by the Supplementary Conditions) provides that its obligations "shall not extend to the liability of [Foreman] ... arising out of ... (2) the giving of or the failure to give directions or instructions by [Foreman] ... provided such giving or failing to give is the primary cause of the injury or damage."

Shoff has demonstrated that there are no issues of fact and that it is entitled to judgment as a matter of law on the cross-claim filed against it by Foreman.  Therefore, its motion for summary judgment should be granted.

<u>Norwin and Foreman's Cross-Motions</u>

In Counts V and VII of the third-party complaint, Norwin alleges breach of contract claims against Foreman.  In Counts VI and VIII, Norwin alleges tort claims of negligence against Foreman.  Norwin and Foreman have filed cross-motions for summary judgment as to these claims.

The Foreman/Norwin Contract required Foreman to provide its services in conjunction with Cunzolo.  (Docket No. 56 Ex. C art. 1.1.2.)  The contract also required Foreman to provide organization, personnel and management to carry out its terms.  (<u>Id.</u> art. 1.1.3.)  Another provision states that Foreman would administer the contract in cooperation with Cunzolo as set forth in General Conditions to the Sheridan and Hillcrest Contracts.  (<u>Id.</u> art. 2.3.2.)  The contract required Foreman to develop and implement procedures for the review and process of applications by contractors for progress and final payment.  It states that "[b]ased on [Foreman's] observations and evaluations of each Contractor's Application for Payment, [Foreman] shall review and certify the amounts due the respective Contractors."  (<u>Id.</u> art. 2.3.11.1.)  Foreman's certification for payment

> shall constitute a representation to [Norwin], based on [Foreman's] determinations at the site ... and on the data comprising [Shoff's] Application for Payment that the Work has progressed to the point indicated and the quality of the Work is in accordance with the Contract Documents....  The issuance of a Certificate for Payment shall further constitute a representation that [Shoff] is entitled to payment in the amount certified.

(<u>Id.</u> art. 2.3.11.3.)  The Contract states that:

> The issuance of a Certificate for Payment shall not be a representation that [Foreman] has (1) reviewed construction means, methods, techniques, sequences for [Shoff's] own Work, or procedures, (2) reviewed copes of requisitions received from Subcontractor and material suppliers and other data requested by [Norwin] substantiate [Shoff's] right to payment, or (3) ascertained how or for

17

what purpose [Shoff] has used money previously paid on account of the Contract Sum.

(Id. art. 2.3.11.4.)  It further states that Foreman was to "forward to [Cunzolo] a final Project Application for Payment upon compliance with the requirements of the Contract Documents." (Id. art. 2.3.27.)

The contract also provides that Foreman "shall not be responsible for the actions taken by [Cunzolo]."  (Id. art. 4.5.)  Norwin was to provide the necessary services to "ascertain how or for what purpose the Contractor has used the money paid by or on behalf of" Norwin.  (Id. art. 4.7. ) Finally, the contract provides that it states the sole obligations of the entities.  (Id. art. 10.6.)

The Supplementary Conditions required Shoff to notify Foreman, Norwin and Cunzolo of any claims made by subcontractors.  (Id. art. 5.6.3.)  The General Conditions provided that Foreman did not have any responsibility for acts or omissions of the contractors in the performance of their work.  (Docket No. 57 Ex. G art. 4.6.6.)  Foreman was required to review and certify

> all Applications for Payment by [Shoff], including final payment.  [Foreman] will assemble each of the Contractor's Applications for Payment with similar Applications from other Contractors into a Project Application and Project Certificate for Payment.  After reviewing and certifying the amounts due the Contractors, [Foreman] will submit the Project Application and Project Certificate for Payment, along with the applicable Contractors' Applications and Certificates for Payment, to [Cunzolo].

(Id. art. 4.6.8.)  The next subsection provided that Cunzolo was to review and certify the Applications for Payment and issue a Project Certificate for Payment.  (Id. art. 4.6.9.) Transmittal of the Final Application for Payment also had to be forwarded to Cunzolo before processing.  (Id. art. 4.6.16.)

Foreman contends that Cunzolo was required to certify the Final Payment Application,

but that it was not.  (Docket No. 57 Ex. H art. 9.3.8.)  Norwin responds that Foreman's contract

with the school district required it to certify the amounts due to the respective subcontractors.

(Docket No. 52 Ex. 2 arts. 2.3.11.1, 2.3.11.3.)

The Cunzolo/Norwin Contract required Cunzolo to provide administration of the contract

in cooperation with Foreman.  (Docket No. 56 Ex. D art. 2.6.2.)  Another section provided that

Cunzolo would certify Applications for Payment and set forth what certification meant.  (Id. art.

2.6.9.1.)  It also defined what certification did not mean.  (Id. art. 2.6.9.2.)[16]  Norwin was to

provide the necessary services to verify the Applications for Payment.  (Id. art. 4.9.)  The contract

represented the sole obligations of each entity.  (Id. art. 9.6.)

Norwin argues that Foreman was obligated to verify that Shoff had complied with its

obligations under the Sheridan and Hillcrest Contracts including its obligation to provide "close-

out" documentation, namely the consent of surety, but that Foreman failed to do so.  Therefore, it

contends that, should the Court determine that it is liable to Plaintiff, then as a matter of law,

Foreman is liable over to Norwin.

Foreman argues that Norwin has failed to establish that it breached a duty to Norwin that

caused Plaintiff's damages; that Plaintiff's claims fail as a matter of law; that Norwin cannot

seek to hold Foreman solely liable for the purported harm caused to Plaintiff; and that Norwin's

tort claims are barred by the gist of the action doctrine.  Its motion is opposed by Great American

(to the extent that it relates to Great American's claims against Norwin), Shoff (to the extent that

it suggests that Shoff must indemnify Foreman for any damages awarded in this case) and

---

[16]     An amendment to the contract modified these provisions but not extensively.  (Docket
No. 56 Ex. D at 17.)

Norwin.

Norwin points out that Foreman was fully aware that a Consent of Surety form was required prior to issuing final payment to Shoff.  It notes that, on July 10, 2003, Foreman sent Shoff a list of close-out procedures, which included obtaining consent of surety.  (Docket No. 52 Ex. 15.)  On August 14, 2003, it sent another letter stating that: "Final payment will not be issued until all punchlist items and other closeout documentation is complete."  (Docket No. 52 Ex. 16.) Finally, in a letter dated October 23, 2003, Tony Sbarra of Foreman reminded Tim Stampo of Shoff that he had to submit Form 707 (Docket No. 52 Ex. 17), which he explained at his deposition was a reference to the consent of surety form.  (Sbarra Dep. at 181-82.)[17]

Norwin notes that Tony Sbarra of Foreman admitted that Foreman was the only entity responsible for verifying that Shoff submitted the Consent of Surety to Final Payment prior to certifying final payment could be issued by Norwin.  (Sbarra Dep. 181-83.)[18]  Foreman claims that Norwin had a contractual obligation to pay Shoff only after Cunzolo certified the Application for Payment.

Steve Balog, Foreman's representative on the Sheridan project, described Foreman's payment application procedure as putting together the Application for Payment, checking Shoff's math and then sending the Application for Payment to the school district, where a representative from Cunzolo would come in and certify it.  (Balog Dep. at 37-38, 60-61.)[19]  Tony Sbarra, Foreman's representative on the Hillcrest project, described the same process with respect to the

---

[17]      Docket No. 52 Ex. 18

[18]      Docket No. 52 Ex. 18.

[19]      Docket No. 58 Ex. Q (Balog Dep. at 37-38); Docket No. 66 Ex. 1 (Balog Dep. at 60-61).

Hillcrest project.  (Sbarra Dep. at 145-47.)[20]

Hank Tkacik, who was the individual at Cunzolo responsible for signing the various

Applications for Payment on these two projects (Tkacik Aff. ¶ 4), describes the procedure

employed as follows:

> a) the Contractors, on a monthly basis, would forward what was known as a
> "pencil copy" of the Application for Payment to Foreman who reviewed the
> Application to determine, in part, if the work had progressed to a point that was
> representative of the payment requested by the contractor; b) after discussing with
> the contractor For[e]man would instruct the Contractor to send them a completed
> Application for Payment making any agreed adjustments; c) Foreman would then
> again review the Application for Payment, certify payment, and send to the School
> District; d) upon receipt our office would be notified by the School District, that
> Applications for Payment had been received from Foreman; e) thereafter, I, or
> another representative of [Cunzolo] would go to the School District and sign the
> Applications for Payment; f) the School District would then issue payments to the
> Contractors in accordance with the Applications for Payment.

(Tkacik Aff. ¶ 5.)  He also states that, at the time of final payment, in addition to submitting an

Application for Payment, contractors were required to submit to Foreman certain "close-out"

documents, which were compiled by Foreman as Construction Manager but were not attached to

the Application for Payment due to their volume.  (Tkacik Aff. ¶ 7.)  He states that his review of

the Applications for Payment did not include verification that all of the close-out documentation

had been submitted, because this documentation was in the possession of Foreman.  (Tkacik Aff.

¶ 8.)

In describing Norwin's role in processing Applications for Payment, John Wilson,

Norwin's business manager, testified that he would look at the applications and monitor the cash

flow of the project, that a representative from Cunzolo would come to the office and sign the

---

[20]     Docket No. 58 Ex. S.

application prior to school board approval, and that the signature of Cunzolo on the application was a condition of payment. The bookkeeper would check to make sure the proper signatures were on the applications. However, he admitted that Norwin made the final payment on the Hillcrest project even though Cunzolo did not sign the Final Application for Payment. (Wilson Dep. at 10-11, 15-17, 28, 30, 32.)[21]

Superintendent Watson stated that Cunzolo should have certified the Final Payment Application on the Hillcrest project. (Watson Dep. at 47-48.)[22] Hank Tkacik states that:

> I have no recollection of reviewing this Application for Payment [nor] can I provide an explanation as to why this office did not sign the Application for Payment. At the time that the Application for Payment was submitted, in December of 2003, I would have signed the Application for Payment because, based on my observations, Shoff's Work had progressed to a point entitling it to final payment. These actions would have been consistent with my review and signature of Shoff's Application for Payment Number 19 on the Sheridan Terrace Project, which I did review and sign.

(Tkacik Aff. ¶ 9.)

Great American's damages were not the result of Norwin's failure to obtain Cunzolo's certification for the Final Payment Application on the Hillcrest project. Rather, it was Norwin's failure to obtain the consent of surety that led to Great American's damages.

Foreman argues that the phrase "consent of surety, if any" qualifies the requirement that it had to submit Great American's consent for Norwin to make final payment to Shoff. Great American responds that the words "if any" modified "surety" not "consent." Not all construction contracts require a surety, but this one had such a condition and therefore the provision applied.

---

[21]     Docket No. 58 Ex. M.

[22]     Docket No. 58 Ex. L.

22

See Capital Indemnity Corp. v. Price Mun. Corp., 2002 WL 818064 (D. Utah Apr. 25, 2002)

(same language employed, municipality found liable for having failed to obtain surety's consent

to final payment).

Foreman also argues that "final payment" was not made on the Sheridan Contract because

$5,000.00 remains unpaid.  The Court addressed this same argument when it was made by

Norwin in a motion to dismiss and rejected it.  The Sheridan Contract clearly defined final

payment as "constituting the entire unpaid balance of the Contract Sum..."  (Docket No. 47 Ex. 1

art. 6.)  This argument is unavailing.

Foreman argues that Norwin's failure to obtain Cunzolo's certification for the final

payment on the Hillcrest project breached its contractual duties and caused Great American's

damages.  As explained above, this argument is unavailing and should be rejected.

Foreman argues that Articles 3.18.1 (Supplementary Conditions) and 3.18.2 (General

Conditions) required Shoff to indemnify and hold Foreman harmless for any claims arising out of

Shoff's work caused in whole or in part by the acts or omissions of Shoff.  As explained above,

the claims asserted by Great American against Norwin do not arise out of Shoff's failure to pay

its subcontractors.  Nor does the claim arise out of Shoff's "performance of the work" so as to

invoke Article 3.18.1.  In addition, Foreman does not have standing to maintain a contractual

claim against Shoff because there is no privity and Article 1.1.2 of the General Conditions states

that the contract documents "shall not be construed to create a contractual relationship of any

kind ... (2) between the Construction Manager and Contractor...."  (Docket No. 57 Ex. G art.

1.1.2.)

Finally, Foreman argues that Great American cannot recover interest and attorney fees

under the Pennsylvania Procurement Code because that Act is for the benefit of subcontractors, not sureties.  Great American responds that, as a subrogee of the unpaid subcontractors and suppliers, it is entitled to all of the benefits of the Procurement Code.

Under the PCSPA, an unpaid subcontractor is entitled to receive interest and attorney fees.  62 Pa. C.S. § 3931.  The Act also provides that interest is to be paid.  § 3932(c).  Another section states that a penalty is imposed equal to "1% per month of the amount that was withheld in bad faith."  § 3935(a).  Attorney fees and expenses are collectible pursuant to § 3935(b).

The PCSPA does not state that its provisions cannot be invoked by sureties or other parties who are not subcontractors.  Moreover, as Great American notes, the Restatement (Third) of Suretyship and Guaranty § 29 (1996) states that "when a secondary obligor is subrogated to the rights of the obligee, the secondary obligor has the same priority to those rights as the obligee."

There are no genuine issues of material fact that Foreman failed to provide close-out documents, including the Consent of Surety.  With respect to the breach of contract claims in Counts V and VII of the third-party complaint, Norwin's motion for summary judgment against Foreman should be granted and Foreman's motion should be denied.

Foreman argues that the gist of the action doctrine bars Norwin's negligence claims in Counts VI and VIII of its third-party complaint.  Count VI alleges that Foreman was negligent in its performance of the Sheridan Contract and Count VIII alleges that Foreman was negligent in its performance of the Hillcrest Contract.

As noted above, under the gist of the action doctrine, "a claim should be limited to the claim when 'the parties' obligations are defined by the terms of the contracts, and not by the

24

larger social policies embodied in the law of torts.'" <u>Bohler-Uddeholm</u>, 247 F.3d at 104 (quoting

<u>Bash v. Bell Tel. Co.</u>, 601 A.2d 825, 830 (Pa. Super. 1992)).  Norwin and Foreman are parties to

a contract that define their duties to one another.  Therefore, the gist of the action doctrine bars

tort claims by Norwin against Foreman.  Norwin has not responded to this argument.  With

respect to Counts VI and VIII of the third-party complaint, Foreman's motion for summary

judgment should be granted and Norwin's motion should be denied.

      For these reasons, it is recommended that the motion for summary judgment submitted on

behalf of Plaintiff (Docket No. 43) be granted.  It is further recommended that the motion for

summary judgment submitted on behalf of Third-Party Defendant Shoff Construction & Design,

Inc. as to the cross-claims filed against it by Third-Party Defendant Foreman Program &

Construction Managers, Inc. (Docket No. 48) be granted.  It is further recommended that the

motion for summary judgment submitted on behalf of Defendant Norwin School District against

Third-Party Defendant Foreman Program & Construction Managers, Inc. (Docket No. 49) be

granted as to Counts V and VII of the Third-Party Complaint and denied with respect to Counts

VI and VIII.  It is further recommended that the motion for summary judgment submitted on

behalf of Third-Party Defendant Foreman Program & Construction Managers, Inc. (Docket No.

53) be granted with respect to Counts VI and VIII of the Third-Party Complaint and denied as to

Counts V and VII.

      It would appear that the following claims remain for disposition: 1) Norwin's claims

against Shoff (Counts I-IV of the third-party complaint); 2) Shoff's counterclaim against Norwin;

3) Shoff's cross-claim against Foreman.

      Within ten (10) days of being served with a copy, any party may serve and file written

objections to this Report and Recommendation.  Any party opposing the objections shall have

seven (7) days from the date of service of objections to respond thereto.  Failure to file timely

objections may constitute a waiver of any appellate rights.

Respectfully submitted,

s/Robert C. Mitchell
ROBERT C. MITCHELL
United States Magistrate Judge

Dated: February 13, 2006